UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLADIMIR LAUZARDO FOMINALLA (A-098-943-662), | No.  1:26-cv-04283-DC-CSK |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| WARDEN, CALIFORNIA CITY (ICE), | |
| Respondent. | |

Petitioner Vladimir Lauzardo Fominalla (A-098-943-662), a native and citizen of Cuba who is proceeding without counsel, filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  In May or July 2005, petitioner entered the United States.  On February 3, 2020, an immigration judge ordered him removed.  Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") officials following his removal order and released under an Order of Supervision on or about February 14, 2020.  On October 21, 2025, ICE officials re-detained petitioner.  This habeas action concerns petitioner's re-detention.  For the reasons that follow, the Court recommends that the petition for writ of habeas corpus be granted.

///

---

[1]  Petitioner is proceeding in forma pauperis.  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

## I.    FACTUAL BACKGROUND

Petitioner entered the United States in May or July 2005.[2]  (See ECF No. 1 at 7; ECF No. 5-2 at 6.)  He was issued a Notice to Appear and released.  (Id.)  On February 3, 2020, an immigration judge ordered him removed to Cuba.  (Id. at 2.)  Petitioner waived appeal.  (Id.)  ICE detained him following his order of removal, and the deportation officer's declaration reflects that petitioner was released and placed on an Order of Supervision on or about February 14, 2020. (ECF No. 5-1 at 3.)

Petitioner has a lengthy criminal history and has been arrested and convicted by local authorities on multiple occasions for different charges.  (ECF No. 5-2 at 9-46.)  On or about May 28, 2024, he was convicted in Florida state court of burglary, mischief damage to property, grand theft, and dealing in stolen property and sentenced to 364 days in custody.  (ECF No. 5 at 2; ECF No. 5-2 at 40-42.)  On May 13, 2025, ICE officials issued an immigration detainer for petitioner following his arrest by the Hillsborough County Sheriff's Office.  (ECF No. 5 at 2; ECF No. 5-2 at 53.)  On October 20, 2025, petitioner was convicted of grand theft.  (ECF No. 5 at 2; ECF No. 5-2 at 44.)  On October 21, 2025, immigration authorities re-detained petitioner.  (ECF No. 1 at 1.)

On March 12, 2026, immigration officials served petitioner with a notice of removal to Mexico because petitioner is not on Cuba's repatriation list.  (ECF No. 5-1 at 3; ECF No. 5-2 at 69.)  On March 12, 2026 and May 12, 2026, immigration officials served petitioner with a Notice to Alien of File Custody Review, informing petitioner that his custody status would be reviewed on March 12, 2026 and May 13, 2026.  (ECF No. 5-2 at 60-61, 71-72.)

## II.    PROCEDURAL BACKGROUND

On June 4, 2026, petitioner filed his petition for writ of habeas corpus.  (ECF No. 1.)  On June 17, 2026, respondent timely filed an answer to the petition.  (ECF No. 5.)  Petitioner did not

---

[2]  Petitioner alleges that he entered the United States on May 15, 2005 as a lawful permanent resident ("LPR").  (ECF No. 1 at 7.)  The Form I-213 indicates that petitioner entered the United States on July 14, 2005, and later applied for LPR status (ECF 5-1 at 2; ECF 5-2 at 6.)  Because the Court need not resolve this factual inconsistency in its determination of the merits of petitioner's claims, the Court declines to do so.

file a reply.  Briefing is now complete.

### III.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

### IV.    DISCUSSION

Petitioner challenges his continued detention based on the following: (1) his prolonged detention violates the Fifth Amendment due process clause; (2) his re-detention is improper where ICE has not established a likelihood of removal in the reasonably foreseeable future or provided evidence of obtaining travel documents; and (3) the revocation of his order of supervision was improper where ICE failed to provide an informal interview.  (ECF No. 1 at 6-8.) Respondent argues that petitioner is subject to detention under 8 U.S.C. § 1231(a)(6) because he is subject to an administratively final order of removal.  (ECF No. 5 at 1-2.)  Respondent further argues petitioner's detention is lawful and not prolonged because he can be readily removed to Mexico.  (Id. at 3-4.)

#### A.    Proper Respondent

As an initial matter, respondent argues the petition should be dismissed for lack of jurisdiction because petitioner does not name the warden or facility administrator where he is detained as a respondent.  (ECF No. 5 at 2-3.)  Because petitioner is currently detained at the California City Detention Facility, the Warden of that facility is the proper respondent.  See

Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004).  As respondent notes, the docket was previously updated to substitute the Warden of California City (ICE) as the correct respondent.  (ECF No. 5 at 2 n.1; ECF No. 4 at 1 n.1.)  Accordingly, the Court has jurisdiction over the petition and respondent's argument fails.

### B.      Detention Authority & Due Process Claims

The parties agree that petitioner is subject to a final order of removal.  (ECF No. 5-2 at 2.)  Accordingly, petitioner's detention is governed by 8 U.S.C. § 1231(a)(6).

Petitioner argues that his re-detention and his continued detention violate his right to due process.  (ECF No. 1 at 6-8.)  Because these claims require examination of whether the government followed its own regulations that set out procedures in revoking release, procedures that protect important due process rights, the Court discusses these claims together.  See Vu v. Noem, 2025 WL 3114341, at *7 (E.D. Cal. Nov. 6, 2025); Nguyen v. Hyde, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (noting that 8 C.F.R. § 241.13(i) was "promulgated to protect a fundamental right derived from the Constitution").

Pursuant to 8 U.S.C. § 1231(a)(1), the Attorney General of the United States shall remove a noncitizen within 90 days, which is referred to as the "removal period."  8 U.S.C. § 1231(a)(1)(A).  The removal period begins on the latest of the following:  (i) the date the removal order becomes administratively final; (ii) if the removal order is judicially reviewed and a stay of removal is ordered, the date of the court's final order; or (iii) the date the noncitizen is released from detention or confinement.  8 U.S.C. § 1231(a)(1)(B).  During the removal period, the noncitizen shall be detained.  8 U.S.C. § 1231(a)(2).  If the noncitizen is not removed within the removal period, the noncitizen shall be released and subject to supervision with certain conditions.  8 U.S.C. § 1231(a)(3).  Here, it is clear the 90-day removal period has long passed where petitioner was ordered removed on February 3, 2020, and the record indicates he waived appeal.  (ECF No. 5-2 at 2.)   It is also undisputed that petitioner was most recently released under an Order of Supervision on or about February 14, 2020.  (ECF No. 5-1 at 3).

A set of regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed.  A noncitizen who has been

4

released under an Order of Supervision "who violates any of the conditions of release may be returned to custody . . . and may be continued in detention for an additional six months in order to affect the alien's removal, if possible[.]"  8 C.F.R. § 241.13(i)(1).  A noncitizen's release may also be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).

Citing Zadvydas, respondent argues that petitioner's detention is not prolonged where the Supreme Court has found that six months is a presumptively reasonable amount of time to effect removal.  (ECF No. 5 at 3.)  Zadvydas dealt with a noncitizen who had been detained and never released following a final order of removal.  Zadvydas, 533 U.S. at 701.  In that context, the Supreme Court held that once a noncitizen has been detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with sufficient evidence to rebut that showing."  Id.

However, the burden-shifting framework from Zadvydas does not apply to petitioner's challenge to his re-detention.  As another district court noted in a similar context, "[t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in Zadvydas."  Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025); see also Yan-Ling X. v. Lyons, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025).  As in Nguyen, "[t]his case is about ICE's authority to re-detain [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]."  Nguyen, 788 F. Supp. 3d at 149.  "[T]his is not your typical first round detainment of an alien awaiting removal.  Petitioner was previously detained, then released on supervised release for several years, and his 90-day removal period expired."  Escalante v. Noem, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).

In the instant case, it is clear that petitioner was previously detained, released on an Order of Supervision in February 2020, and has been re-detained well beyond the expiration of the 90-day removal period.  Therefore, respondent has the burden of demonstrating that there is a significant likelihood that petitioner may be removed pursuant to 8 C.F.R. § 241.13(i)(2) in order to justify his detention.

Here, the immigration judge ordered petitioner removed to Cuba. (ECF No. 5-2 at 2.) Respondent makes no attempt to demonstrate that petitioner's removal to Cuba is likely in the reasonably foreseeable future and concedes that "removal to Cuba is not currently available." (ECF No. 5 at 3-4.) Instead, respondent asserts that petitioner is subject to removal to the third country of Mexico and that he can be "readily removed from the United States to Mexico, if he were to cooperate in the removal process." (Id. at 3.) Respondent has not identified any specific steps taken with the Mexican government to arrange for petitioner's removal to that country in the nine months since his re-detention and the four months since immigration officials informed him of their intention to remove him to Mexico. (See ECF No. 5-2 at 69.) Accordingly, the Court finds the government has not met its burden of demonstrating that there is a significant likelihood of petitioner's removal to Mexico in the reasonably foreseeable future. See Arenado-Borges v. Bondi, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025) ("[S]tanding alone, the fact that removals to a particular country 'are in fact occurring,' says nothing about whether Mexico will accept [petitioner] any time soon.").

Further, respondent has not presented sufficient evidence of petitioner's alleged noncooperation with ICE's efforts to remove him to Mexico. (See ECF No. 5.) Although the evidence submitted by respondent indicates that petitioner declined signing several immigration forms, respondent presents no evidence that petitioner has failed to cooperate in identity verification, travel-document processing, or other required steps. (See ECF No. 5-2 at 61, 66, 67, 69.) The deportation officer's declaration states that petitioner has refused to accept removal to Mexico. (ECF No. 5-1 at 3.) However, petitioner's refusal to consent to his removal to a third country does not amount to affirmative misrepresentation or refusal to apply for travel documents that would defeat petitioner's Zadvydas claim. See, e.g., Pelich v. I.N.S., 329 F.3d 1057, 1059 (9th Cir. 2003) (petitioner refused to fill out a passport application and provided conflicting biographical information); Lema v. I.N.S., 341 F.3d 853, 856-57 (9th Cir. 2003) (petitioner refused to cooperate honestly with officials to secure travel documents from a foreign government).

Petitioner was re-detained on October 21, 2025, and has been detained for over nine

6

months without removal.  Based on the current record, the Court concludes that petitioner's removal is not reasonably foreseeable and the petition should be granted.  See Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (remedy is release upon a finding that removal was not reasonably foreseeable).

### C.    Petitioner's Other Claims for Relief

Petitioner also asserts that ICE improperly revoked his Order of Supervision by failing to provide him with an informal interview (claim three).  (ECF No. 1 at 7.)  The government does not respond to or dispute petitioner's claim that he was not provided with an informal interview. (See ECF No. 5.)  The Court notes that it appears revocation of supervision in October 2025 was authorized where petitioner was convicted of multiple felonies in May 2024 and October 2025. Petitioner appears to actually challenge the government's compliance with post-revocation procedures.  Regardless, because the Court recommends granting the petition based on respondent's failure to establish a reasonable likelihood of removal in the reasonably foreseeable future, the Court need not address any additional claims raised in the petition.  See N.K. v. Noem, No. 1:26-cv-0292 KES SAB, 2026 WL 130345, at *1 (E.D. Cal. Jan. 16, 2026) (granting habeas petition as to the second count of the petition and not addressing other counts because the petitioner was entitled to the relief sought based on the court's ruling as to that second count); Constantinovici v. Bondi, No. 3:25-cv-2405 RBM AHG, 2025 WL 2898985, at *7 (S.D. Cal. Oct. 10, 2025) (granting habeas petition based on due process claim and "declin[ing] to address the remaining grounds in the Petition for seeking release").

### D.    Remedy

Based on the recommendation that the petition be granted, this Court recommends that petitioner be immediately released to return him to the status quo before the pending controversy. See Yang v. Kaiser, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante litem is "the last uncontested status which preceded the pending controversy").  Because petitioner challenges his current re-detention, the last uncontested status of petitioner was his release under the February 14, 2020 Order of Supervision before his re-detention on October 21, 2025.

/ / /

## V.    CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2.  Petitioner Vladimir Lauzardo Fominalla (A-098-943-662) be immediately released from ICE custody under the same conditions he was previously released in his February 14, 2020 Order of Supervision.  If respondent has custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondent shall return those to petitioner at the time of release.  Respondent be enjoined and restrained from re-detaining petitioner absent compliance with constitutional protections, which include, at a minimum, compliance with the requirements of 8 C.F.R. § 241.13(i) for revocation of release, and any other applicable statutory and regulatory procedures.  Because petitioner is proceeding pro se, respondent be further directed to file a status report within seven (7) days from the date of his release.

3.  The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 29, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/lauz4283.2241.imm/9

8